## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAWN BEYE, KATHLEEN BRADLEY and CHRISTINE BYRAM, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., MAGELLAN HEALTH SERVICES, INC., GREEN SPRING HEALTH SERVICES, INC., MAGELLAN BEHAVIORAL HEALTH, INC., and MAGELLAN BEHAVIORAL HEALTH OF NEW JERSEY, LLC, <br><br> Defendants. | Civ. No. 06-5337 (FSH) |
| SUZANNE FOLEY, RONALD DRAZIN, AND RONALD SEDLAK, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., MAGELLAN HEALTH SERVICES, INC., GREEN SPRING HEALTH SERVICES, INC., MAGELLAN BEHAVIORAL HEALTH, INC., and MAGELLAN BEHAVIORAL HEALTH OF NEW JERSEY, LLC <br><br> Defendants. | Civ. No. 06-6219 (FSH) |

## MEMORANDUM IN SUPPORT OF
## MAGELLAN'S MOTION TO DISMISS
### (REDACTED VERSION)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ..................................................................................................... 2

STATEMENT OF FACTS ........................................................................................ 2

I.      The Magellan Defendants ............................................................................. 2

II.     Horizon ......................................................................................................... 4

III.    The New Jersey Parity Law ......................................................................... 5

IV.     The *Beye* And *Foley* Plaintiffs' Allegations ................................................ 6

MOTION TO DISMISS STANDARDS ................................................................... 9

I.      Rule 12(b)(1) Standards ............................................................................... 9

II.     Rule 12(b)(6) Standards ............................................................................... 9

ARGUMENT ............................................................................................................ 11

I.      This Court Lacks Subject Matter Jurisdiction Over The Claims Of Non-ERISA
        Plaintiffs ...................................................................................................... 11

        A.      CAFA's Home-State Controversy Exception Defeats Jurisdiction Over
                The Claims Of Non-ERISA Plaintiffs. ............................................. 11

        B.      The Court Should Decline To Exercise Supplemental Jurisdiction. ..... 13

II.     Plaintiffs Have Failed To State A Claim In All Counts Against Magellan .... 14

        A.      Magellan Health Services, Inc. And Magellan Behavioral Health, Inc. Are
                Not Parties To The Horizon Contract And The Claims Against Them
                Should Be Dismissed. ....................................................................... 14

        B.      The Parity Law Claims Should Be Dismissed. .................................. 15

                1.      The Parity Law Does Not Apply To Magellan. .................... 15
                2.      There Is No Private Right Of Action Under The New Jersey Parity
                        Law. ................................................................................. 16

        C.      ERISA Preempts The Common Law And Consumer Fraud Act Claims. ..... 18

D.    Plaintiffs' Claims For Breach Of Fiduciary Duty Fail As A Matter Of Law. ........................................................................................................ 20

    1.    Magellan Is Not An ERISA Fiduciary. ............................................... 21
    2.    *Foley*'s Breach of Fiduciary Duty Claim Also Fails Because It Is Duplicative Of Other ERISA Claims For Denial Of Benefits. ............... 23
    3.    *Beye*'s Common Law Claim For Breach Of Fiduciary Duty Should Also Be Dismissed. ............................................................................. 24

E.    The Third Party Beneficiary Breach Of Contract Claims Should Be Dismissed. ........................................................................................... 26

F.    The Claims For Tortious Interference With Contract Should Be Dismissed. ........................................................................................... 28

G.    Plaintiffs' NJCFA Claims Should Be Dismissed. ................................... 29

    1.    Plaintiffs' NJCFA Claims Fail Because Plaintiffs Do Not Allege That Magellan Sold Or Advertised Any Merchandise Or Real Estate. ............................................................................................ 29
    2.    Plaintiffs Do Not Allege Fraud With The Specificity Required By The NJCFA. ................................................................................... 31

H.    *Beye* Plaintiffs' UTPCPL Claim Should Be Dismissed. ......................... 33

    1.    New Jersey Plaintiffs Do Not Have Standing For A UTPCPL Claim. ............................................................................................ 33
    2.    Plaintiffs Cannot Bring A UTPCPL Claim In Tandem With A NJCFA Claim Under New Jersey Law. .............................................. 33
    3.    The UTPCPL Claim Fails Because There Are No Allegations That Plaintiffs Relied Upon Any Conduct Or Representations Of Magellan. ...................................................................................... 34

I.    The Claims Of The Medical Necessity Plaintiffs Should Be Dismissed. ............ 35

J.    Magellan's Bankruptcy Discharge Bars Claims For Conduct Before January 2004 ........................................................................................ 37

CONCLUSION ............................................................................................ 38

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ........................................................................................ 18

*Albert Einstein Med. Ctr. v. Nat'l Benefit Fund for Hosp. of Health
Care Employees*, 740 F. Supp. 343 (E.D. Pa. 1989) ....................................... 19

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981) ........................................................................................ 18

*American Med. Sec. v. Bartlett*,
111 F.3d 358 (4th Cir. 1997)............................................................................ 6

*Atlass v. Mercedes-Benz USA, LLC*,
No. 07-2720 2007 U.S. Dist. LEXIS 72603 (D.N.J. Sept. 25, 2007)............ 33, 34

*Baker v. Family Credit Counseling Corp.*,
440 F. Supp. 2d 392 (E.D. Pa. 2006) .............................................................. 32

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)...............................................................................9, 15, 35

*Bowman v. Cont'l Cas. Co. of Chicago*,
No. 3-93-CV-1060, 1999 U.S. Dist. LEXIS 2725 (D. Conn. Mar. 4, 1999) ................ 21, 22

*Carton v. Choice Point*,
450 F. Supp. 2d 489 (D.N.J. 2006) .................................................................. 16

*Cetel v. Commonwealth Life Ins. Co.*,
460 F.3d 494 (3d Cir. 2006)............................................................................. 30

*Coleman v. Nationwide Life Ins. Co.*,
969 F.2d 54 (4th Cir. 1992).............................................................................. 21

*Cox v. Keystone Carbon Co.*,
894 F.2d 647 (3d Cir. 1990), *cert denied*, 498 U.S. 811 (1990) ......................... 13

*Danca v. Private Health Care Sys., Inc.*,
185 F.3d 1 (1st Cir. 1999)................................................................................. 20

*DeAsencio v. Tyson Foods, Inc.*,
342 F.3d 301 (3d Cir. 2003).............................................................................. 13

*Del Tufo v. National Republican Senatorial Comm.*,
  591 A.2d 1040 (N.J. Super. Ch. Div. 1991) ........................................................ 30

*Dello Russo v. Nagel*,
  358 N.J. Super. 254 (App. Div. 2003) ........................................................ 28, 29

*Doug Grant, Inc. v. Greater Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000) ........................................................ 10, 15, 23

*F.C.C. v. NextWave Personal Communications*,
  537 U.S. 293 (2003) ........................................................ 37

*F.G. v. MacDonell*,
  696 A.2d 697 (N.J. 1997) ........................................................ 25

*Fahs Rolston Paving Corp. v. Pennington Properties Development Corp.*,
  No. 03-4593, 2007 WL 2362606 (D.N.J. Aug. 14, 2007) ........................................................ 27

*Fox Fuel, A Division of Keroscene, Inc. v. Delaware Count School
  Joint Purchasing Board*, 856 F.Supp. 945 (E.D. Pa. 1994) ........................................................ 14

*Garlick v. Quest Diagnostics, Inc.*,
  No. 06-6244, 2007 U.S. Dist. LEXIS 95160 (D.N.J. Dec. 28, 2007) ........................................................ 25

*Gold Mills, Inc. v. Orbit Processing Corp.*,
  297 A.2d 203 (N.J. Super. Ct. Law Div. 1972) ........................................................ 27

*Grant v. Coca-Cola Bottling Company*,
  780 F. Supp. 246 (D.N.J. 1991) ........................................................ 27

*Griggs v. Bertram*,
  443 A.2d 163 (N.J. 1982) ........................................................ 26

*Haidle v. Chippenham Hosp., Inc.*,
  855 F. Supp. 127 (E.D. Va. 1994) ........................................................ 22

*Halstead v. Motorcycle Safety Foundation, Inc.*,
  71 F.Supp.2d 455 (E.D. Pa. 1999) ........................................................ 14

*Heindel v. Pfizer, Inc.*,
  381 F. Supp. 2d 364 (D.N.J. 2004) ........................................................ 33

*Hirschbach v. NVE Bank*,
  496 F. Supp. 2d 451 (D.N.J. 2007) ........................................................ 12

*Huss v. Green Spring Health Services, Inc.*,
  18 F. Supp. 2d 400 (D.N.J. 1998) ........................................................ 19, 20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)............................................................. 10

*In re Cambridge Biotech Corp.*,
    186 F.3d 1356 (Fed. Cir. 1999)........................................................... 38

*In re Commissioner of Insurance's March 24, 1992 Order*,
    606 A.2d 851 (App. Div. 1992), *aff'd* 624 A.2d 565 (1993)............... 17

*JM Realty & Investments, LLC v. Kennedy Funding, Inc.*,
    No. 07-218, 2007 U.S. Dist. LEXIS 54103 (D.N.J. July 26, 2007)...... 28

*Johnson v. New York Admin. for Children's Servs*,
    No. 07-1853, 2007 WL 2900400 (D.N.J. Sep. 28, 2007).................... 10

*Kadetsky v. Egg Harbor Twp. Bd. of Ed.*,
    164 F. Supp. 2d 425 (D.N.J. 2001)..................................................... 13

*Khoudary v. Salem County Bd. of Social Services*,
    615 A.2d 281 (N.J. Super. Ct. App. Div. Oct. 30, 1992).................... 13

*Kitson v. Bank of Edwardsville*,
    No. 06-528, 2006 WL 3392752 (S.D. Ill. Nov. 22, 2006)................... 12

*Klosterman v. Western Gen. Mgmt., Inc.*,
    32 F.3d 1119 (7th Cir. 1994)............................................................. 22

*Krafczek v. Exide Corp.*,
    No. 00-1965, 2007 WL 1199530 (E.D. Pa. Apr. 19, 2007)................. 38

*Kresmery v. Service Am. Corp.*,
    227 B.R. 10 (D. Conn. 1998).............................................................. 38

*Lankford v. Irby*,
    No. 04-2636, 2006 U.S. Dist. LEXIS 70862 (D.N.J. Sept. 29, 2006)....... 25

*Lemelledo v. Beneficial Mgmt. Corp.*,
    696 A.2d 546 (1997).......................................................................... 17

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)........................................................... 3, 10

*Marks v. Independence Blue Cross*,
    71 F. Supp. 2d 432 (E.D. Pa. 1999).................................................... 21

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ..................................................................... 23, 24

*MCI WorldCom Network Servs., Inc. v. Graphnet*,
No. 00-5255, 2005 US Dist. LEXIS 40835 (D.N.J. May 11, 2005) ............................... 3, 38

*Morgan v. Gay*,
471 F.3d 469 (3d Cir. 2006)........................................................................... 9

*Morley v. Avaya Inc. Long Term Disability Plan for Salaried Employees*,
No. 04-409, 2006 U.S. Dist. LEXIS 53720 (D.N.J. Aug. 3, 2006)..................................... 24

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977)........................................................................... 9

*Naporano Iron & Metal Co. v. American Crane Corp.*,
79 F. Supp. 2d 494 (D.N.J. 1999)..................................................................... 31

*New York State Conference of Blue Cross & Blue Shield Plans v.
Travelers Ins. Co.*, 514 U.S. 645 (1995)............................................................ 18

*O'Loughlin v. National Community Bank*,
770 A.2d 1185 (N.J. Super. 2001).................................................................... 30

*Paul Revere Life Insurance Co. v. Fink*,
No. 07-1648, 2007 U.S. Dist. LEXIS 84060 (D.N.J. Nov. 14, 2007)................................... 31

*Peters v. United States Dept. of Housing and Urban Dev.*,
No. 04:0057, 2006 U.S. Dist. LEXIS 4727 (D.N.J. Feb. 1, 2006)..................................... 25

*Pierzga v. Ohio Cas. Group of Ins. Cos.*,
504 A.2d 1200 (N.J. Super. Ct. App. Div. 1986)...................................................... 17

*Pinto v. Reliance Std. Life Ins. Co.*,
214 F.3d 377 (3d Cir. 2000)........................................................................... 13

*Pittsburgh v. W. Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998)............................................................................ 3

*Pryzbowski v. U.S. Healthcare, Inc.*,
245 F.3d 266 (3d Cir. 2001)........................................................................... 18

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
168 A.2d 1132 (2001).............................................................................. 16, 17

*Rieder Cmtys. v. Township of South Brunswick*,
546 A.2d 563 (N.J. Super. Ct. App. Div. 1988)....................................................... 27

*Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield
of Pennsylvania, Inc.*, 49 F. Supp. 2d 728 (D.N.J. 1999).............................................. 29

*Rubin-Schneiderman v. Merit Behavioral Care Corp.*,
No. 00-Civ.-8101, 2003 U.S. Dist. LEXIS 14811 (S.D.N.Y. Aug. 27, 2003) ...................... 20

*Seville Indus. Machinery v. Southmost Machinery*,
742 F.2d 786 (3d Cir. 1984) ....................................................................................... 32

*Sexton v. PNC Bank*,
792 A.2d 602 (Pa. Super. Ct. 2002) ............................................................................. 34

*Toy v. Metropolitan Life Ins. Co.*,
928 A.2d 186 (Pa. 2007) ............................................................................................. 34

*Traverso v. Home Depot U.S.A., Inc.*,
No. 07-1324, 2007 U.S. Dist. LEXIS 78364 (D.N.J. Oct. 23, 2007) ................................. 29

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ................................................................................................... 24

*Victaulic Co. v. Tieman*,
499 F.3d 227 (3d Cir. 2007) ....................................................................................... 10

*Warburton v. Foxtons, Inc.*,
No. 04-2474 (FLW), 2005 WL 1398512 (D.N.J. June 13, 2005) ...................................... 10

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*,
No. 06-928, 2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ............................ 18, 19

*Weinberg v. Sun Co., Inc.*,
777 A.2d 442 (Pa. 2001) ............................................................................................. 34

*Wellness Publ'g v. Barefoot*,
No. 02-3773, 2008 U.S. Dist. LEXIS 1514 (D.N.J. Jan. 8, 2008) ............................. 9, 10, 28

## Statutes and Regulations

11 U.S.C. § 101(12) ........................................................................................................ 38

11 U.S.C. § 1141(d)(1)(A) ............................................................................................... 37

28 U.S.C. 1331 .............................................................................................................. 11

28 U.S.C. 1332(d) ...................................................................................................... 11, 12

28 U.S.C. 1367 ......................................................................................................... 11, 13

29 U.S.C. § 1002(21)(A) ................................................................................................. 21

29 U.S.C. § 1109 ............................................................................................................ 23

29 U.S.C. § 1132 .................................................................................................11, 23, 24

29 U.S.C. § 1144(a) ......................................................................................... 18

29 U.S.C. §§ 1001, *et seq.* ............................................................................ 2, 8

5 U.S.C. § 8914 (2007) ..................................................................................... 6

N.J. Admin. Code § 11:4-57.1 (2007) ............................................................. 5

N.J. Stat. Ann. § 17:48-15 (2007) ................................................................... 16

N.J. Stat. Ann. § 17:48-6v (2007) ............................................................... 5, 15

N.J. Stat. Ann. § 17:48A-7u (2007) ............................................................ 5, 15

N.J. Stat. Ann. § 17:48E-35.20 (2007) ....................................................... 5, 15

N.J. Stat. Ann. § 17:48H-1 (2007) .................................................................. 16

N.J. Stat. Ann. § 17B:26-2.1s (2007) ......................................................... 5, 15

N.J. Stat. Ann. § 17B:27-46.1v (2007) ....................................................... 5, 15

N.J. Stat. Ann. § 17B:27A-7.5 (2007) ........................................................ 5, 15

N.J. Stat. Ann. § 26:2J-24 (2007) ................................................................... 16

N.J. Stat. Ann. § 26:2J-4.20 (2007) ......................................................... 5, 6, 15

N.J. Stat. Ann. § 56:8-2 (2007) ...................................................................... 30

## **Rules**

F.R.C.P. 12(b)(1) .............................................................................................. 1

F.R.C.P. 12(b)(6) .............................................................................................. 1

Defendants Magellan Health Services, Inc., Green Spring Health Services, Inc., Magellan Behavioral Health, Inc., and Magellan Behavioral Health of New Jersey, LLC,[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss the claims asserted against them in the Third Amended Complaint in *Beye, et al. v. Horizon, et al.,* Civil Action No. 06-5337 (FSH) (PS) ("*Beye* TAC") and the Second Amended Complaint in *Foley, et al. v. Horizon, et al.*, Civil Action No. 06-06219 (FSH) (PS) ("*Foley* SAC").[2]

Pursuant to Rule 12(b)(1), Magellan moves to dismiss the claims of plaintiff Beye in the *Beye* action and plaintiff Sedlak in the *Foley* action for lack of subject matter jurisdiction.

Pursuant to Rule 12(b)(6), Magellan moves to dismiss all claims asserted against it in both actions – in *Beye,* Count IV (Violation of the New Jersey Parity Law); Count V (Violation of New Jersey Consumer Fraud Act); Count VI (Violation of the Pennsylvania Consumer Fraud Act); Count IX (Tortious Interference with Contract Rights); Count X (Third Party Beneficiary Breach of Contract); and Count XI (Breach of Fiduciary Duty), as well as in *Foley*, Count II (Violation of the New Jersey Parity Law); Count III (Breach of Fiduciary Duty), Count IV (Violation of the New Jersey Consumer Fraud Act); Count V (Tortious Interference with Contract Rights); and Count VI (Third Party Beneficiary Breach of Contract).

---

[1] The four Magellan defendants are collectively referred to herein as "Magellan" or "the Magellan Defendants" unless otherwise specified.

[2] Plaintiffs Foley and Bradley recently submitted to the Court voluntary stipulations in which they seek to withdraw as class representatives, and therefore Magellan does not address their claims in this Motion.  *See* Stipulations of Dismissal as Class Representatives filed on January 10, 2008 (Foley) and January 25, 2008 (Bradley).  The Court issued an Order dismissing plaintiff Bradley's claims as a named class representative on January 28, 2008.  If the Court does not allow plaintiff Foley's withdrawal, Magellan reserves the right to move to dismiss her claims.

## INTRODUCTION

These actions are brought on behalf of putative classes of individuals who are subscribers of health plans administered by defendant Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"). The crux of the plaintiffs' claims is a dispute about *coverage* for treatment of eating disorders under their Horizon health plans. Plaintiffs pursued their claims solely against Horizon for over a year, before recently amending their complaints to add the four Magellan Defendants.

The threshold deficiency of the belated amendments is that there is no legal basis for plaintiffs' claims against Magellan. Magellan neither contracted with, nor made representations to, plaintiffs regarding coverage under their Horizon plans. Magellan's sole function is to manage behavioral healthcare benefits that Horizon makes available to its health plan members. Given this limited role, Magellan cannot be liable to plaintiffs for disputes regarding coverage under Horizon's plans. Moreover, plaintiffs' claims are preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*. Plaintiffs' claims are also deficient because they fail to plead the required elements of the New Jersey and Pennsylvania common law and statutory causes of action asserted against Magellan. Finally, plaintiffs' claims against several of the Magellan Defendants have been discharged in bankruptcy to the extent that they arose prior to January 1, 2004.

## STATEMENT OF FACTS

### I.    The Magellan Defendants

The original *Beye* complaint filed on November 8, 2006 and the original *Foley* complaint filed on December 26, 2005 asserted claims against only Horizon. On December 10, 2007, plaintiffs amended their complaints to add claims against the Magellan Defendants.

Magellan is a specialty managed health organization, which includes a managed behavioral healthcare business. *Beye* TAC ¶¶ 13-16; *Foley* SAC ¶¶ 32, 52.[3] [4] *Beye* TAC ¶ 31; *Foley* SAC ¶ 32. Plaintiffs do not allege that any of the Magellan Defendants themselves issue health benefits coverage to Horizon health plan members. *See generally Beye* TAC; *Foley* SAC.

On March 11, 2003, Green Spring Health Services, Inc. and Magellan Behavioral Health, Inc. as well as certain other affiliated entities filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 03-40515 (PCB).[5]   On October 8, 2003, the Bankruptcy Court entered an Order

---

[3] The *Beye* and *Foley* Complaints contain numerous factual inaccuracies which, if this case were to proceed beyond the pleading stage, would be proven false.

[4] The MCS Agreement contains confidential information, requiring Magellan to file a contemporaneous letter motion seeking the Court's permission to file under seal pursuant to Paragraph 18 of the June 29, 2007 Stipulated Discovery Confidentiality Order on Information Application.  This Court may consider the MCS Agreement at this stage of the litigation because plaintiffs rely on the agreement in their complaints.  See *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004) (stating that at the motion to dismiss stage the Court may take into account the allegations contained in the operative complaints, any exhibits attached to the complaints, matters of public record, and documents upon which plaintiffs' claims are founded).

[5] On a motion to dismiss, the Court may take judicial notice of bankruptcy proceedings. *See MCI WorldCom Network Servs., Inc. v. Graphnet*, No. 00-5255, 2005 US Dist. LEXIS 40835, at *27 (D.N.J. May 11, 2005).  *See also Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998) (court may consider matters of public record on motion to dismiss).  Defendant Magellan Behavioral Health of New Jersey, LLC ("Magellan – New Jersey") neither sought nor received bankruptcy protection.

confirming Magellan's Third Amended Joint Plan of Reorganization,[6] dated August 18, 2003.
*See* Order Confirming Debtors' Third Amended Joint Plan of Reorganization, as Modified,
Pursuant to Chapter 11 of the Bankruptcy Code ("Confirmation Order") (Quinn Cert. Exh. 3).
On January 5, 2004, certain Magellan entities emerged from Chapter 11 bankruptcy proceedings.
*Beye* TAC 6 n.1.  Pursuant to the Confirmation Order, the Bankruptcy Court discharged, and
enjoined the assertion of, all claims "based upon any act or omission, transaction, or other
activity of any kind or nature that occurred prior to the Effective Date [as defined in the
confirmed plan], whether or not such holder has filed a proof of claim or proof of equity interest,
and whether or not the fact of or legal bases therefore were known or existed prior to the
Effective Date." *Id.*  The confirmed Reorganization Plan defined the Effective Date as January
5, 2004. *Id.*

## II.   **Horizon**

Horizon is a managed care organization that operates, insures, funds, manages, and
administers various HMOs, PPOs, POS and other health plans.  *Beye* TAC ¶ 12; *Foley* SAC ¶ 7.
Each of the plaintiffs are members of a Horizon health benefits plan.  *Beye* TAC ¶ 12; *Foley*
SAC ¶ 7.

Horizon's health benefits plans explicitly incorporate the statutory language of the New
Jersey Parity Law, which requires that biologically-based mental illnesses be covered under the
same terms and conditions as any other illness covered by Horizon.  *Foley* SAC ¶ 14; *Beye* TAC
¶ 26.  For mental illnesses that are non-biologically based, Horizon's policies limit inpatient and

---

[6] The Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the
Bankruptcy Code is attached as Exhibit 2.

outpatient coverage to a maximum number of dates of service per calendar year and/or during a member's lifetime.  *See Beye* TAC ¶ 22; *Foley* SAC ¶¶ 4, 14.

## III.   <u>The New Jersey Parity Law</u>

The New Jersey Parity Law requires health plans, such as those offered by Horizon, to cover biologically-based mental illnesses under the same terms and conditions as medical illnesses.  The Parity Law provides in relevant part:

> [e]very enrollee agreement delivered, issued, executed or renewed in this State . . . . on or after the effective date of this act shall provide health care services for biologically-based mental illness under the same terms and conditions as provided for any other sickness under the agreement.  "Biologically-based mental illness" means a mental or nervous condition that is caused by a biological disorder of the brain and results in a clinically significant or psychological syndrome or pattern that substantially limits the functioning of the person with the illness, including but not limited to, schizophrenia, schizoaffective disorder, major depressive disorder, bipolar disorder, paranoia and other psychotic disorders, obsessive-compulsive disorder, panic disorder and pervasive developmental disorder or autism. "Same terms and conditions" means that the health maintenance organization cannot apply different copayments, deductibles or health care services limits to biologically-based mental health care services than those applied to other medical or surgical health care services.

N.J. Stat. Ann. § 26:2J-4.20 (2007); N.J. Stat. Ann. § 17:48-6v (2007); N.J. Stat. Ann. § 17:48A-7u (2007); N.J. Stat. Ann. § 17:48E-35.20 (2007); N.J. Stat. Ann. § 17B:26-2.1s (2007); N.J. Stat. Ann. § 17B:27-46.1v (2007); N.J. Stat. Ann. § 17B:27A-7.5 (2007).  Neither the Parity Law nor its implementing regulations identify anorexia, bulimia or other eating disorders as biologically-based illnesses.  N.J. Stat. Ann. §§ 17:48-6v(a) (2007); N.J. Stat. Ann. § 17:48A-7u(a) (2007); N.J. Stat. Ann. § 17:48E-35.20(a) (2007); N.J. Stat. Ann. § 17B:26-2.1s(a) (2007); N.J. Stat. Ann. § 17B:27-46.1v(a) (2007); N.J. Stat. Ann. § 17B:27A-7.5(a) (2007); N.J. Stat. Ann. § 26:2J-4.20(a) (2007); *see also* N.J. Admin. Code § 11:4-57.1 (2007)  Further, the Parity Law makes clear that the parity requirements do not affect the manner in which a health plan

5

determines whether a mental health care service is medically necessary.  *See, e.g.*, N.J. Stat. Ann. 26:2J-4.20(b) (2007) ("Nothing in this section shall be construed to change the manner in which a health maintenance organization determines. . . whether a mental health care service meets the medical necessity standard as established by the health maintenance organization").  In addition, the Parity Law does not apply to members of the following types of plans:  self-funded, Medicare Risk and the Federal Employees Health Benefits Program.  *See Am. Med. Sec. v. Bartlett*, 111 F.3d 358, 365 (4th Cir. 1997) (self-funded plans are beyond the reach of state insurance regulation); *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 895 (8th Cir. 2005) (ERISA's deemer clause exempted self-funded plan from being subject to Nebraska's mental health parity law); 5 U.S.C. § 8914 (2007) (FEHBP Preemption provision).

## IV.    **The *Beye* And *Foley* Plaintiffs' Allegations**

Plaintiffs allege that they are subscribers of Horizon health plans under which their minor daughters received health benefits.  *Beye* TAC ¶¶ 8-10; *Foley* SAC ¶¶ 4-6.  The *Beye* plaintiffs assert claims against Horizon and Magellan as representatives of a purported class of individuals described as follows:

> all other similarly situated subscribers and insureds of Horizon insurance plans throughout the States of New Jersey and Pennsylvania…who have been denied or reduced coverage for out-patient and in-patient treatment of eating disorders including, but not limited to, anorexia nervosa and bulimia, on the alleged basis asserted by Horizon and Magellan that eating disorders are not biologically-based mental illnesses ("BBMI").

*Beye* TAC ¶ 1.  The *Foley* plaintiffs assert claims against Horizon and Magellan as representatives of a purported class of individuals who are covered by Horizon health insurance plans and who have been "denied or reduced coverage for treatment of eating disorders, including, but not limited to, anorexia nervosa and bulimia."  *Foley* SAC ¶ 1; *see also id.*, ¶ 19 ("Plaintiffs are representatives of, and similarly situated to, a class of all individuals who are

6

covered by medical insurance but who are denied coverage for medical costs relating to the treatment of Eating Disorders."). The putative class in *Foley* consists of both New Jersey citizens and citizens of other unidentified states. *Id.*

Plaintiffs allege that their minor daughters have been diagnosed with eating disorders that require them to receive inpatient and/or outpatient treatment beyond the coverage limits set forth in Horizon's health plan documents. *Beye* TAC ¶ 26; *Foley* SAC ¶ 12. Plaintiffs allege that Horizon improperly denied or reduced coverage for the treatment of eating disorders on the basis that their daughter's conditions are non-biologically based – a determination plaintiffs claim to be erroneous, in conflict with the Parity Law, and contrary to the parity terms in the relevant Horizon health plan documents. *Beye* TAC ¶¶ 1, 26; *Foley* SAC ¶¶ 12-16. While *Beye* states that the allegedly improper coverage determinations were made in 2006 with respect to plaintiff Beye's daughter (*Beye* TAC ¶ 38-42), and in 2007 with respect to plaintiff Byram's daughter (*id.*, ¶ 45-47), *Foley* does not specify when the allegedly improper coverage determinations were made with respect to the daughters of plaintiffs Drazin and Sedlak.

Plaintiffs also claim that Horizon and Magellan violated the Parity Law by denying claims for eating disorders on the grounds that the treatment was "not medically necessary or appropriate." *Beye* TAC ¶ 24; *Foley* SAC ¶ 16. The *Beye* plaintiffs assert that while coverage for eating disorders is denied "under the guise that the treatment is 'not medically necessary or appropriate,' the issue of whether eating disorders are BBMI . . . is the threshold issue that must first be resolved in order to determine the amount and extent of coverage available under the Horizon policies." *Beye* TAC ¶ 24. The *Foley* plaintiffs similarly assert that the "decision to deny coverage as non-medically necessary is pretextual and arbitrary," and is "in reality based upon the determination that (i) the benefits had been exhausted and/or; (ii) the eating disorder is

not biologically based." *Foley* SAC ¶ 16.  The *Foley* plaintiffs further contend that "[i]n fact, the care and treatment for each plaintiff is in fact medically necessary." *Id*.

Plaintiffs fall into two categories based on the reason why they allege coverage was denied and/or reduced.  Plaintiffs Beye and Drazin allege coverage was denied and/or reduced because their daughter's conditions are non-biologically based.  *See Beye* TAC ¶¶ 40-41; January 23, 2008 letter from Philip R. Sellinger to the Hon. Faith S. Hochberg ("Sellinger Letter") (*Foley* Dkt. 87).  By contrast, plaintiffs Byram and Sedlak allege coverage was denied because their daughters' eating disorder treatments was found not to be "medically necessary."  *See Beye* TAC ¶¶ 45-46; Sellinger Letter.

Plaintiffs also fall into two categories based on the nature of their Horizon health insurance plans.  Plaintiffs Byram and Drazin have Horizon health plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.  Beye* TAC ¶ 10; *Foley* SAC ¶ 4.  Plaintiffs Beye and Sedlak have Horizon health plans *not* governed by ERISA.  *See Beye* TAC ¶ 8; *Foley* SAC ¶ 6.

Plaintiffs assert the following claims against *both* Horizon and Magellan:  violation of New Jersey Consumer Fraud Act (the "NJCFA") (*Beye* Count V; *Foley* Count IV); violation of Pennsylvania Consumer Fraud Act (the "UTPCPL") (*Beye* Count VI); and violation of New Jersey Parity Law (*Beye* Count IV; *Foley* Count II).

Plaintiffs assert the following claims against solely Magellan:  tortious interference with contract rights (*Beye* Count IX; *Foley* Count V); third party beneficiary breach of contract (*Beye* Count X; *Foley* Count VI); and breach of fiduciary duty (*Beye* Count XI; *Foley* Count III).

<u>**MOTION TO DISMISS STANDARDS**</u>

**I.      <u>Rule 12(b)(1) Standards</u>**

A plaintiff seeking to proceed in federal court bears the burden of proving that subject matter jurisdiction properly exists. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006) (burden of establishing jurisdiction under the Class Action Fairness Act is on party asserting jurisdiction).  Under a Rule 12(b)(1) motion to dismiss, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.  When a defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6), a court should consider the Rule 12(b)(1) challenge first, because if the court must dismiss the case for lack of subject matter jurisdiction, the other grounds for dismissal become moot and need not be addressed. *Wellness Publ'g v. Barefoot*, No. 02-3773, 2008 U.S. Dist. LEXIS 1514, at *18 (D.N.J. Jan. 8, 2008).

**II.      <u>Rule 12(b)(6) Standards</u>**

The United States Supreme Court recently clarified the burden a plaintiff faces in satisfying federal pleading requirements to avoid dismissal under Rule 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 1964-65.  Rather, a plaintiff must make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965.

The Third Circuit Court of Appeals has applied *Twombly*'s standards in assessing the viability of complaints on multiple occasions.  For example, quoting *Twombl*y, the Third Circuit

held that to survive a motion to dismiss, "a civil plaintiff must allege facts that raise a right to

relief above the speculative level on the assumption that the allegations in the complaint are true

(even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citations

omitted). As this Court has noted, *Twombly* mandates at the motion to dismiss stage that the

court assess whether plaintiff's complaint "contain[s] either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal

theory." *Johnson v. New York Admin. for Children's Servs*, No. 07-1853, 2007 WL 2900400, at

*1 n.1 (D.N.J. Sep. 28, 2007) (citations omitted). Indeed, *Twombly's* rigorous standards have

been applied in this district to some of the same causes of action found here. *See, e.g., Wellness

Publ'g*, 2008 U.S. Dist. LEXIS 1514, at *16, 52-58 (applying motion to dismiss standard, as

"refashioned" by the *Twombly* court, in case dismissing claim for tortious interference with

contract).

   In considering Magellan's motion to dismiss under Rule 12(b)(6), the Court may take

into account the allegations contained in the operative complaints, any exhibits attached to the

complaints, matters of public record, and documents upon which plaintiffs' claims are founded.

*Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004). A document forms the basis of a

claim if it is "integral to or explicitly relied on in the complaint." *In re Burlington Coat Factory

Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking

at the texts of the document on which its claim is based by failing to attach or explicitly cite

them."). If plaintiffs' allegations are contradicted by the documents upon which they base their

claims, the Court is not required to accept such allegations as true. *Warburton v. Foxtons, Inc*.,

No. 04-2474 (FLW), 2005 WL 1398512, at *4 (D.N.J. June 13, 2005); *see also Doug Grant, Inc.

v. Greater Bay Casino Corp*., 232 F.3d 173, 183-84 (3d Cir. 2000) ("[W]hile our standard of

review requires us to accept as true all factual allegations in the complaint, we need not accept as true unsupported conclusions and unwarranted inferences.") (citations omitted).

Thus in addressing this motion, the Court should consider the MCS Agreement between Horizon and Magellan because plaintiffs' claims, including plaintiffs' third party beneficiary breach of contract claims, are based directly on this document. Where plaintiffs' factual allegations are contradicted by the express language of the MCS Agreement, the Court should not accept such allegations as true in considering the viability of plaintiffs' claims.

## ARGUMENT

**I.    This Court Lacks Subject Matter Jurisdiction Over The Claims Of Non-ERISA Plaintiffs**

### A.    CAFA's Home-State Controversy Exception Defeats Jurisdiction Over The Claims Of Non-ERISA Plaintiffs.

Plaintiffs allege different bases for federal court jurisdiction over their claims. For those who are members of a health plan governed by ERISA *(e.g.,* Byram and Drazin), plaintiffs allege jurisdiction based on § 502 of ERISA, 29 U.S.C. § 1132, and federal question jurisdiction, 28 U.S.C. § 1331. *Beye* TAC ¶ 6; *Foley* SAC ¶ 2. For those plaintiffs who are members of a health plan *not* governed by ERISA (*e.g.,* Beye and Sedlak), plaintiffs allege jurisdiction based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), and supplemental jurisdiction under 28 U.S.C. § 1367. CAFA jurisdiction, however is unavailable to the plaintiffs because of the "home-state controversy exception." Further, this Court should decline to exercise supplemental jurisdiction over the claims of non-ERISA plaintiffs.

CAFA provides jurisdiction for class actions where the class size exceeds 100 members, the amount in controversy (exclusive of interest and costs) exceeds $5,000,000, and any class member is a citizen of a state different from any defendant ("minimal diversity"). 28 U.S.C. § 1332 (d)(2) and (d)(5)(B). In addition, under CAFA's "home-state controversy exception," a

11

district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the plaintiff class and the primary defendants are citizens of the forum state.  28 U.S.C. § 1332 (d)(4); s*ee Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 458-59 (D.N.J. 2007).  Here, the home-state controversy exception applies because two-thirds or more of the plaintiff class are New Jersey citizens, and the primary defendant Horizon is also a New Jersey citizen.

Although *Beye* is brought on behalf of a putative class of subscribers and insureds in New Jersey and Pennsylvania (*Beye* TAC ¶ 1), both of the *Beye* class representatives are New Jersey citizens.  Likewise, although *Foley* is brought on behalf of a putative class of citizens of New Jersey and "state[s] other than New Jersey" (*Foley* SAC ¶ 1), both of the *Foley* class representatives are New Jersey citizens.  Plaintiffs have not met their burden on CAFA jurisdiction because they have not pled or established that fewer than two-thirds of the plaintiff classes are New Jersey citizens.

Both operative complaints also make it clear that Horizon is the primary defendant.  Courts have interpreted § 1332 (d)(4)(B)'s "primary defendant" requirement as referring to "those parties having a dominant relation to the subject matter of the controversy."  *Kitson v. Bank of Edwardsville*, No. 06-528, 2006 WL 3392752, at *16 (S.D. Ill. Nov. 22, 2006) (finding that defendant was not "primary defendant" because its liability depended on other defendant's liability).  Horizon issues the health plans and sets the coverage terms, which are at the heart of these actions.  The fact that in multiple complaints, the *Beye* and *Foley* plaintiffs initially named only Horizon is further evidence that Horizon is the primary defendant.

Accordingly, under 28 U.S.C. § 1332(d)(4)(B), the home-state controversy exception applies and requires this Court to decline to exercise jurisdiction over the claims of non-ERISA plaintiffs.

**B.     The Court Should Decline To Exercise Supplemental Jurisdiction.**

The sole remaining basis for jurisdiction over the claims of non-ERISA plaintiffs is

supplemental jurisdiction under 28 U.S.C. § 1367.  The Court has discretion not to exercise

supplemental jurisdiction, also known as "pendent jurisdiction."  *See DeAsencio v. Tyson Foods,*

*Inc.*, 342 F.3d 301, 308 (3d Cir. 2003).  As one court in this District observed:

> If the court finds that it possesses the power to hear the pendent
> claim(s), then it still possesses the discretion to dismiss plaintiff's
> state law claims if it finds that . . . 'economy, convenience and
> fairness to the litigants' caution against supplemental jurisdiction
> . . . or if inclusion of state law claims could unduly complicate the
> case or confuse a jury.

*Kadetsky v. Egg Harbor Twp. Bd. of Ed.*, 164 F. Supp. 2d 425, 436 (D.N.J. 2001) (citation

omitted).  This Court should decline to exercise supplemental jurisdiction over the claims of non-

ERISA plaintiffs for several reasons.

First, combining the two types of claims could lead to confusion because different

standards of review and procedural rules apply to the ERISA and non-ERISA plaintiffs' claims.

*Compare Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000) (Third Circuit holding

that plan administrator's coverage determination was subject to a modified arbitrary and

capricious standard of review under ERISA), *with Khoudary v. Salem County Bd. of Social*

*Services*, 615 A.2d 281, 286 (N.J. Super. Ct. App. Div. Oct. 30, 1992) ("The preponderance of

the evidence standard of proof is applicable in the normal civil case.").  For example, non-

ERISA plaintiffs may be entitled to a jury trial, but ERISA plan plaintiffs are not.  *See Cox v.*

*Keystone Carbon Co.*, 894 F.2d 647, 650 (3d Cir. 1990), *cert denied*, 498 U.S. 811 (1990).

Second, there is no economy and convenience to warrant supplemental jurisdiction here,

where each plaintiff's claims arises out of its own unique set of facts.  For example, plaintiff

Beye's health benefits claim was denied due to the exhaustion of inpatient benefits.  *Beye* TAC

¶¶ 38, 41.  By contrast, plaintiff Byram's claim was denied because the treatment was not

medically necessary.  *See id.*, ¶ 45.  There is no compelling reason for the Court to exercise

supplemental jurisdiction over factually disparate claims.

II.     **Plaintiffs Have Failed To State A Claim In All Counts Against Magellan**

A.     **Magellan Health Services, Inc. And Magellan Behavioral Health, Inc.
Are Not Parties To The Horizon Contract And The Claims Against
Them Should Be Dismissed.**

Plaintiffs allege that each of the Magellan Defendants entered into the MCS Agreement

with Horizon.  *Beye* TAC ¶¶ 13-16, 31; *Foley* SAC ¶¶ 8-10.  The MCS Agreement on its face

establishes, however, that its contracting parties are only Green Spring Health Services, Inc.

("Green Spring") and Magellan-New Jersey.  Prior to 2006, Green Spring was a party to the

MCS Agreement.  Effective January 1, 2006, Magellan-New Jersey was substituted as the

Magellan party to the MCS Agreement.  *See* MCS Agreement, Amendment 17 (Quinn Cert. Exh.

1).  Because Magellan Behavioral Health, Inc. and Magellan Health Services, Inc. have never

been parties to the MCS Agreement, they should be dismissed from this action.

Plaintiffs apparently rely on a reference in the MCS Agreement to Magellan Behavioral

Health and Magellan Health Services, Inc. as a basis for their claims, but this argument is

unfounded.  It is clear from the reference that neither Magellan Behavioral Health nor Magellan

Health Services are parties to that contract.  It is fundamental contract law that one cannot be

liable for a breach of contract unless one is a party to that contract.  *Fox Fuel, A Division of*

*Keroscene, Inc. v. Delaware Count School Joint Purchasing Board*, 856 F.Supp. 945, 953 (E.D.

Pa. 1994) (granting motion to dismiss breach of contract claims asserted against entities that

were not parties to the contract).  *See also Halstead v. Motorcycle Safety Foundation, Inc.*, 71

F.Supp.2d 455, 460 (E.D. Pa. 1999) (dismissing plaintiff's breach of contract claims with

prejudice when plaintiff was not a party to the contract).  Moreover, the fact that Green Spring at

times conducted business under the name "Magellan Behavioral Health" does not provide a legal

basis for asserting claims against the separate corporation Magellan Behavioral Health, Inc.,

which is a distinct legal entity.[7]

Finally, this Court may disregard plaintiffs' conclusory allegations that each of the

Magellan Defendants administered Horizon's health plans, given plaintiffs' failure to plead any

supporting facts.  *See Twombly*, 127 S. Ct. at 1965 (plaintiff must make a showing rather than a

blanket assertion of entitlement to relief at the pleading stage); *Doug Grant, Inc.*, 232 F.3d 183-

84 (on a motion to dismiss, court need not accept as true unsupported conclusions and

unwarranted inferences).

### B.      The Parity Law Claims Should Be Dismissed.

### 1.      The Parity Law Does Not Apply To Magellan.

The Parity Law applies to the following types of entities that issue health benefits

coverage in New Jersey:  (1) hospital service corporations (*see* N.J. Stat. Ann. § 17:48-6v

(2007)); (2) medical services corporations (*see* N.J. Stat. Ann. § 17:48A-7u (2007)); (3) health

service corporations (*see* N.J. Stat. Ann. § 17:48E-35.20(2007))**;** (4) individual health insurers

(*see* N.J. Stat. Ann. § 17B:26-2.1s (2007)); (5) group health insurers (*see* N.J. Stat. Ann.

§ 17B:27-46.1v (2007)); (6) individual health benefits plans (*see* N.J. Stat. Ann. § 17B:27A-7.5

(2007)); and (7) health maintenance organizations (*see* N.J. Stat. Ann. § 26:2J-4.20 (2007)).

Magellan does not fall into any of the foregoing categories.  Rather, Magellan is licensed in New

Jersey as an Organized Delivery System, which is an entity that contracts with a carrier for the

purpose of arranging for the provision of healthcare services to health plan members.  *See* N.J.

---

[7] Counsel for Magellan has attempted to resolve this issue with plaintiffs' counsel, but plaintiffs
have refused to dismiss Magellan Health Services, Inc. and Magellan Behavioral Health, Inc.

Stat. Ann. § 17:48H-1 (2007); *see also* State of New Jersey Department of Banking and

Insurance: Organized Delivery Systems, http://www.state.nj.us/dobi/mcods.htm (last visited Jan.

28, 2008). (New Jersey Department of Banking & Insurance webpage identifying Magellan-New

Jersey as a licensed Organized Delivery System in the State of New Jersey).  As a result,

Magellan is neither regulated by, nor subject to liability under, this statute.

> **2.** **There Is No Private Right Of Action Under The New Jersey Parity Law.**

Plaintiffs' claims under the New Jersey Parity Law should also be dismissed because the

statute does not, either explicitly or implicitly, provide a private right of action.  The Parity Law

provides for enforcement by the state of New Jersey and contains civil penalty provisions.  *See*

N.J. Stat. Ann. § 26:2J-24 (2007)(a) and (c) (providing for enforcement by Commissioners of

Health and Banking and Insurance and for administrative penalty "not less than $250 nor more

than $10,000 for each day that the [HMO] is in violation of [the HMO Act]"); *see also* N.J. Stat.

Ann. § 17:48-15 (2007) (providing that "[a]ny hospital service corporation … which shall have

violated any provisions … of [the Hospital Service Corporations] Act … shall be liable to a

penalty of five hundred dollars ($500.00), to be sued for and collected by the Commissioner of

Banking and Insurance in a civil action in the name of the State.").

New Jersey courts are reluctant to infer a statutory private right of action where the

Legislature has not expressly provided one.  *See Carton v. Choice Point*, 450 F. Supp. 2d 489,

499 (D.N.J. 2006) (finding no private right of action under New Jersey Unclaimed Property Act

because inferring right would not be consistent with underlying purpose of legislative scheme)

(citing *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 A.2d 1132 (2001)).  In

considering whether a statute permits an implied private right of action, a court must consider

whether the Legislature intended to create a private right of action under the statute, and whether

it is consistent with the legislative scheme to infer the existence of such a remedy. *R.J. Gaydos Ins. Agency*, 168 A.2d at 1143. Moreover, New Jersey courts generally do not infer a private right of action where the statutory scheme contains civil penalty provisions. *Id.* at 1144. As the New Jersey Appellate Division has explained:

> Whenever the Legislature intended to create civil penalties for violations of insurance statutes, regulations, and Department orders, it knew how to do so . . . Implied remedies are unlikely to be intended by a Legislature that enacts a comprehensive legislative scheme including an integrated system of procedures for enforcement.

*Id.* at 1145 (citing *In re Commissioner of Insurance's March 24, 1992 Order*, 606 A.2d 851 (App. Div. 1992), *aff'd* 624 A.2d 565 (1993)).[8]

Applying these principles, this Court should reject plaintiffs' attempted private action here to enforce the Parity Law. There is no evidence in the language of the Parity Law or otherwise indicating the Legislature intended to create a private right of action under the statute. Because the Parity Law specifically provides for enforcement and civil penalties by the New Jersey Department of Banking and Insurance, it is not consistent with the legislative scheme to infer the existence of a private right of action.

_____

[8] Similarly, the New Jersey Insurance Trade Practices Act has been found to have no private right of action. *See, e.g., Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546 (1997) (finding no private right of action for damages under Insurance Trade Practices Act, New Jersey Producer Licensing Act, or Credit Life and Health Insurance Act, and distinguishing those statues from Consumer Fraud Act that expressly provides consumers with a cause of action); *Pierzga v. Ohio Cas. Group of Ins. Cos.*, 504 A.2d 1200 (N.J. Super. Ct. App. Div. 1986) (holding that no private cause of action exists under Insurance Trade Practices Act).

**C.      ERISA Preempts The Common Law And Consumer Fraud Act Claims.**

Where plaintiffs' health benefits plans are governed by ERISA (*Beye* TAC ¶¶ 9-10, *Foley* SAC ¶¶ 4-5), plaintiffs' state common law and statutory law claims are preempted.  ERISA preempts any attempts to adjudicate coverage disputes under state law that in any way "relate to" the terms of an ERISA plan.  *See* 29 U.S.C. § 1144(a).  Section 514(a) of ERISA expressly supersedes "any and all State laws insofar as they may now or they may now hereafter relate to any employee benefit plan."  *See* 29 U.S.C. § 1144(a).  Both common law and statutory law are preempted under this provision.  *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-59 (1995).  Section 514 is intended to be "expansive" in order to "ensure that employee benefit plan regulation [is] 'exclusively a federal concern.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).  As the Third Circuit explained in *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001):

> [S]uits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a). . . . The rationale for these holdings is that the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the HMO or insurance company, and therefore 'relates to' the employee benefit plan.

This Court and others uniformly have held that state law claims for benefits under an ERISA-governed plan, such as those asserted by plaintiffs Byram and Drazin, "relate to" that plan and are therefore preempted.  *See, e.g., Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-928, 2007 U.S. Dist. LEXIS 61137, at *15 (D.N.J. Aug. 20, 2007) (finding that ERISA preempted plaintiffs' state law claims of unjust enrichment, tortious interference with contractual rights, and violation of the NJCFA because these claims were being used to recover

18

benefits); *Huss v. Green Spring Health Services, Inc.*, 18 F. Supp. 2d 400, 405-06 (D.N.J. 1998) (holding that common law breach of fiduciary duty claim was preempted because the alleged wrong related to the administration of the plan); *Albert Einstein Med. Ctr. v. Nat'l Benefit Fund for Hosp. of Health Care Employees*, 740 F. Supp. 343, 347 (E.D. Pa. 1989) ("There is no question that the provisions of ERISA preempt plaintiffs' third party beneficiary claims against the Fund.  Resolution of these claims requires reference to the terms of the ERISA plan itself, because the plaintiffs are claiming that the terms of the plan require payment for the services they rendered.").  In addition, the plaintiffs' statutory consumer fraud claims also fall clearly within ERISA's broad preemptive scope.  *See Wayne Surgical Ctr.,* 2007 U.S. Dist. LEXIS 61137, at *15 (finding that ERISA preempted plaintiffs' state law claim for violation of the NJCFA because claims were being used to recover benefits).

The state law claims of ERISA plan plaintiffs here are clearly premised on their contention that they are due benefits under their Horizon health benefits plans.  The *Beye* complaint explicitly states that the action is brought "individually and on behalf of all other similarly situated subscribers and insureds of Horizon insurance plans . . . who have been denied or reduced coverage for out-patient and in-patient treatment of eating disorders including, but not limited to, anorexia nervosa and bulimia, on the alleged basis asserted by Horizon and Magellan that eating disorders are not biologically-based mental illnesses."  *Beye* TAC ¶ 1.  Similarly, the *Foley* complaint states that "[t]his is a class action, on behalf of all individuals who are covered by medical insurance written by Horizon Blue Cross Blue Shield of New Jersey, Inc. . . . where Horizon and "Magellan" as defined below, has [sic] set limitations on payments and denied or reduced coverage for treatment of eating disorders, including, but not limited to, anorexia

nervosa and bulimia." *Foley* SAC ¶ 1. Plaintiffs, therefore, cannot avoid the broad preemptive scope of ERISA.

Moreover, ERISA preemption applies with equal force to claims asserted against managed behavioral healthcare organizations ("MBHOs") such as Magellan. *See Huss v. Green Spring,* 18 F. Supp. 2d at 405-06 (finding that plaintiffs' claims of breach of contract, breach of fiduciary duty, and medical malpractice against an MBHO were preempted by ERISA); *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1 (1st Cir. 1999) (holding that plaintiff's tort claims against MBHO for denial of precertification for treatment of plaintiff's mental illness were preempted by ERISA); *Rubin-Schneiderman v. Merit Behavioral Care Corp.*, No. 00-Civ.-8101, 2003 U.S. Dist. LEXIS 14811, at *2 (S.D.N.Y. Aug. 27, 2003) (holding that plaintiff's common law claims against an MBHO were preempted by ERISA). Here, as in the above-cited cases, the Court should find that plaintiff Byram's claims against Magellan for tortious interference with contract rights, third party beneficiary breach of contract, and breach of fiduciary duty, violation of the NJCFA and UTPCPL, as well as plaintiff Drazin's claims against Magellan for tortious interference with contract, third party beneficiary breach of contract, and violation of the NJCFA, are preempted by ERISA and should be dismissed.

> **D.** **Plaintiffs' Claims For Breach Of Fiduciary Duty Fail As A Matter Of Law.**

Plaintiffs assert two separate bases for breach of fiduciary duty against Magellan. The *Foley* plaintiffs contend that Magellan breached its fiduciary duties under ERISA by "setting limitations on payments and denying or reducing coverage for treatment of Eating Disorders." *Foley* SAC ¶ 37. The *Beye* plaintiffs plead a claim for breach of fiduciary duty under New Jersey common law, asserting that "Magellan breached its fiduciary duty . . . by utilizing the wrong criteria in its determinations, by wrongfully reducing or denying valid eating disorder

claims, and by denying eating disorder claims by improperly characterizing them as Non-BBMI." *Beye* TAC ¶ 112. Both claims for breach of fiduciary duty fail as a matter of law.

### 1.    Magellan Is Not An ERISA Fiduciary.

ERISA states "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). To establish liability for breach of fiduciary duty under ERISA, a plaintiff must demonstrate that: "(1) [defendant] performed discretionary functions for the plan, and (2) those particular functions are related to the breach of duty claimed by plaintiffs. In other words, there must be a nexus between the breach and the discretionary authority exercised." *See Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432, 434 (E.D. Pa. 1999); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) (stating that the court must "ask whether [defendant] is a fiduciary with respect to the particular activity at issue").

In a situation similar to the one here, the court in *Bowman v. Continental Casualty Co. of Chicago*, No. 3-93-CV-1060, 1999 U.S. Dist. LEXIS 2725, at *8-9 (D. Conn. Mar. 4, 1999), held that a third party administrator was not an ERISA fiduciary. There, defendant Crystal Brands acted as plan fiduciary but contracted out administrative services to defendant Continental Casualty Company. ██████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ In determining the viability of the plaintiff's claim for breach of fiduciary duty against Continental,

the court held that "a claims administrator without the final discretionary authority is not a proper defendant to be held liable for a plan fiduciary's ERISA violation."  *Id*. at *8-9.

Other courts similarly have held that, absent final adjudicatory authority over claims, a third party is not an ERISA fiduciary.  *See Klosterman v. Western Gen. Mgmt., Inc*., 32 F.3d 1119, 1124 (7th Cir. 1994) (holding that the third party administrator was not a fiduciary even though it had developed a computer program based on the plan's parameters to aid in making claims determinations, because another entity "retained the authority to make the ultimate decisions in all doubtful or contested claims and all claims in which legal actions were proceeding."); *Haidle v. Chippenham Hosp., Inc*., 855 F. Supp. 127, 132 (E.D. Va. 1994) (rejecting plaintiff's argument that third party administrator had made the actual decision denying benefits because the administrative services contract "vest[ed] ultimate authority over the plan" in the plan administrator).

██████████████████████████████████████████   Accordingly, Magellan is not subject

to liability as an ERISA fiduciary.

>    **2.**    ***Foley*'s Breach of Fiduciary Duty Claim Also Fails Because It
>    Is Duplicative Of Other ERISA Claims For Denial Of Benefits.**

ERISA provides two avenues for recovery for breach of fiduciary duty.  The first avenue

is Section 1109, which allows recovery for breach of fiduciary duty in the form of personal

liability by the fiduciary for such "losses to the plan resulting from each such breach, and to

restore to such plan any profits of such fiduciary which have been made through use of assets of

the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the

court may deem appropriate, . . . ."  29 U.S.C. § 1109.  This provision may only be asserted for

the benefit of the ERISA plan; individual relief is not available.  *See Massachusetts Mut. Life

Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985).  The second avenue is Section 502(a)(3), which

allows an individual beneficiary to bring a claim "to enjoin any act or practice which violates any

provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable

relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the

terms of the plan."  29 U.S.C. § 1132(a)(3).

The *Foley* plaintiffs do not identify any specific ERISA provision as the basis for their

fiduciary breach claims.  But even if the *Foley* plaintiffs are seeking relief under Section

502(a)(3), their fiduciary claim must be dismissed because such a request for relief duplicates the

relief requested in their ERISA denial of benefits claim under Section 502(a)(1)(B).  This Court

---

[9] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

*See Doug Grant, Inc.,* 232 F.3d at 183-84.

addressed the issue of duplicative requests for relief under Sections 502(a)(1)(B) and 502(a)(3) in *Morley v. Avaya Inc. Long Term Disability Plan for Salaried Employees*, No. 04-409, 2006 U.S. Dist. LEXIS 53720 (D.N.J. Aug. 3, 2006), and dismissed the duplicative breach of fiduciary duty claim.  The Court relied, in part, on the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996), which explained that "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  *Cf. Russell*, 473 U.S. at 147 (stating that to recover benefits due a beneficiary may file suit pursuant to Section 502(a)(1)(B) "to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future").

*Foley* plaintiffs request a "mandatory injunction requiring payment of medical claims related to the care and treatment of Eating Disorders and pre-certification for care and treatment, including in network and out of network facilities."  *Foley* SAC at 9-10.  As in *Morley*, this amounts to a request for the payment of plan benefits, which is already asserted and available under 29 U.S.C. § 1132(a)(1)(B).  Since the *Foley* plaintiffs separately plead a claim for denial of benefits under Section 502(a)(1)(B), their claim for identical equitable relief under an ERISA breach of fiduciary duty theory should be dismissed as duplicative.

### 3.  *Beye*'s Common Law Claim For Breach Of Fiduciary Duty Should Also Be Dismissed.

*Beye* plaintiffs assert a claim for breach of fiduciary duty against Magellan under the common law.  *Beye* TAC ¶¶ 110-13.  In addition to being preempted by ERISA with respect to plaintiff Byram, this claim fails because plaintiffs have not pled an adequate factual basis.  The New Jersey Supreme Court has held that:

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position.  A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.

*F.G. v. MacDonell*, 696 A.2d 697, 703-04 (N.J. 1997) (finding existence of fiduciary relationship between parishioner and pastor because parishioner trusted and sought counseling and advice from pastor).  *See also Peters v. United States Dept. of Housing and Urban Dev.,* No. 04:0057, 2006 U.S. Dist. LEXIS 4727, at *21 (D.N.J. Feb. 1, 2006) (dismissing fiduciary duty claim as a matter of law because plaintiffs failed to establish that defendant was in "a position of trust, confidence, or dominance.").  Courts also have described a fiduciary duty as requiring an agency relationship between the parties.  *See, e.g., Garlick v. Quest Diagnostics, Inc*., No. 06-6244, 2007 U.S. Dist. LEXIS 95160, at *17 (D.N.J. Dec. 28, 2007) (noting that New Jersey law requires an agency relationship); *Lankford v. Irby*, No. 04-2636, 2006 U.S. Dist. LEXIS 70862, at *23 (D.N.J. Sept. 29, 2006) ("Plaintiffs have presented no evidence and made no arguments that an agency relationship existed between Plaintiffs and Defendants, an essential element in a breach of fiduciary duty claim.").

*Beye* plaintiffs have failed to allege any facts tending to show that there was a unique degree of trust and confidence between them and Magellan, that Magellan exercised superior control or influence over plaintiffs, or that there was an agency relationship between plaintiffs and Magellan.  The *Beye* Third Amended Complaint contains only conclusory allegations, stating "[a]s the entity which was performing all of the decisions on whether to allow, reduce or

deny the plaintiffs' eating disorder claims, Magellan owed the Representative Plaintiffs and the Plaintiff Class a fiduciary duty to properly perform such determinations." *Beye* TAC ¶ 111.[10]

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

█████████   There is no allegation (nor could there be) that Magellan provided mental health coverage to the plaintiffs, or that Magellan acted as the agent of the *Beye* plaintiffs in administering the mental health benefits provided under their Horizon health benefits plans.  And although New Jersey courts have recognized an insurer's fiduciary duty to its insureds in certain situations,[11] this duty does not extend to a third party, such as Magellan, which is not an insurer, has no contract with health plan members and only acts to administer limited benefits.

For these reasons, *Beye* plaintiffs' claim for breach of fiduciary duty under common law should be dismissed.

### E. The Third Party Beneficiary Breach Of Contract Claims Should Be Dismissed.

In is undisputed that plaintiffs do not have standing to bring a breach of contract claim against Magellan because Magellan is not a party to plaintiffs' respective insurance contracts

---

[10] The *Foley* complaint appears to assert a claim for breach of fiduciary duty only under ERISA, and not under state common law.  *See generally Foley* SAC ¶¶ 30-38.  To the extent that the *Foley* plaintiffs are attempting to assert a claim for breach of fiduciary duty under New Jersey common law, however, this claim fails for the same reasons that the *Beye* claim fails.

[11] This duty, moreover, typically has been recognized in the context of an insurer's duty to defend or settle a lawsuit against an insured in a liability policy context.  *See, e.g., Griggs v. Bertram*, 443 A.2d 163, 170 (N.J. 1982) ("The insurance policy itself" contains an "implied but compelling fiduciary duty" requiring the insurance company to actively exercise its "exclusive right under the policy to control the claim" against the insured.).

with Horizon.  Attempting to overcome this hurdle, plaintiffs assert claims for "third party

beneficiary breach of contract," claiming that they are third party beneficiaries of the MCS

Agreement between Horizon and Magellan-New Jersey.

Under New Jersey law, to be entitled to third party beneficiary status, a plaintiff must

show that the contracting parties intended that plaintiff should "receive a benefit which might be

enforced in the courts."  *Rieder Cmtys. v. Township of South Brunswick*, 546 A.2d 563, 566 (N.J.

Super. Ct. App. Div. 1988) (citation omitted).  "Unless such a conclusion can be derived from

the contract or surrounding facts, a third party has no right of action under that contract despite

the fact that he may derive an incidental benefit from its performance."  *Id.* (quoting *Gold Mills,*

*Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (N.J. Super. Ct. Law Div. 1972)).

In *Fahs Rolston Paving Corp. v. Pennington Properties Development Corp.*, No. 03-

4593, 2007 WL 2362606 (D.N.J. Aug. 14, 2007), the Court addressed potential third party

beneficiary rights under a contract for the purchase of real property.  The court found that:

> Although there is evidence that both parties had intended the
> property be used to build an assisted living facility by Fahs
> Rolston, there is no evidence that either party intended that
> Proposed Plaintiffs be entitled to any rights or obligations flowing
> from the contract.  The Proposed Plaintiffs were neither mentioned
> in the original contract nor disclosed to Pennington.  The lack of
> clear intent with regard to Proposed Plaintiffs in the formation of
> the contract demonstrates that any benefits received by such
> individuals would be merely incidental and would not sustain their
> rights as third-party beneficiaries.

*Id.* at *5.  *See also Grant v. Coca-Cola Bottling Company*, 780 F. Supp. 246, 249 (D.N.J. 1991)

(applying New Jersey law and granting defendant's motion to dismiss third party beneficiary

breach of contract claim because only one provision of the contract dealt with individuals in the

plaintiff's position, and that provision did not "grant or impliedly confer upon the [plaintiff] any

claim to enforce the agreement.").

Here, plaintiffs have failed to plead facts sufficient to establish a claim for third party beneficiary breach of contract. Plaintiffs do not allege that Horizon and Magellan entered into the MCS Agreement with the intention of providing plaintiffs with legally enforceable rights. *See JM Realty & Investments, LLC v. Kennedy Funding, Inc.*, No. 07-218, 2007 U.S. Dist. LEXIS 54103, at *5 (D.N.J. July 26, 2007) (dismissing third party beneficiary claim because there was no allegation that the parties to Agreement intended plaintiff to be a third party beneficiary). ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

### F.     The Claims For Tortious Interference With Contract Should Be Dismissed.

Plaintiffs' claims for tortious interference with contract fail for several reasons.[12]  Under New Jersey law, one of the fundamental requirements of a claim for tortious interference is that the interference "was inflicted *intentionally* by a defendant who is not a party to the contract." *Wellness Publ'g v. Barefoot*, No. 02-3773 (JAP), 2008 U.S. Dist. LEXIS 1514, at *55 (D.N.J. Jan. 9, 2008) (emphasis added) (quoting *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App.

---

[12] Plaintiffs essentially allege that in carrying out its obligations under the MCS Agreement, Magellan tortiously interfered with the plaintiffs' rights to receive coverage under their health benefits plans with Horizon. *See generally Beye* TAC ¶¶ 99-103; *Foley* SAC ¶¶ 46-50. Specifically, plaintiffs allege the MCS Agreement made Magellan the "exclusive arbiter" of mental health benefits for Horizon's insureds and that Magellan was thereby entrusted with making coverage determinations for plaintiffs' eating disorder claims. *Beye* TAC ¶ 100; *Foley* SAC ¶ 47.  They further allege that Magellan interfered with plaintiffs' insurance contracts with Horizon by establishing and employing Magellan Behavioral Health Criteria to make coverage determinations that were in contravention of the terms of those contracts. *Beye* TAC ¶ 102; *Foley* SAC ¶ 49.

Div. 2003)).  Only a party who maliciously induces another to breach his contract can be liable under a tortious interference theory.  *Id.*  New Jersey law defines malice as "the intentional doing of a wrongful act without justification or excuse;" an act is considered wrongful "if it is illegal or if it is 'transgressive of generally accepted standards of morality.'"  *Id.* at *57 (quoting *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 728, 737 (D.N.J. 1999)).  The fact that a party acts to advance its own interest and financial position does not establish the required malice or wrongful conduct.  *Dello Russo*, 358 N.J. at 268.

Here, plaintiffs have not alleged that Magellan *intentionally* interfered with the plaintiffs' insurance contracts with Horizon, nor that Magellan's conduct was illegal or against generally accepted standards of morality.  Plaintiffs merely have alleged that Magellan made determinations that allegedly contradicted the terms of plaintiffs' insurance contracts.  This alleged conduct falls far short of the malice plaintiffs must allege in order to state a tortious interference claim.  Moreover, as a matter of logic, Magellan cannot have been acting "without justification or excuse" in simply carrying out the terms of the MCS Agreement with Horizon, under which it agreed to administer certain portions of the plaintiffs' insurance contracts with Horizon – the very contracts with which Magellan supposedly interfered.  For these reasons, plaintiffs' claim for tortious interference with contract fails.

### G.  Plaintiffs' NJCFA Claims Should Be Dismissed.

#### 1.  Plaintiffs' NJCFA Claims Fail Because Plaintiffs Do Not Allege That Magellan Sold Or Advertised Any Merchandise Or Real Estate.

To state a claim under the NJCFA, a plaintiff must allege:  "(1) the defendant committed an unlawful practice that violates the NJCFA, (2) the plaintiff suffered an ascertainable loss as a result of the unlawful conduct, and (3) a causal relationship exists between the unlawful practice

and the plaintiff's loss." *Traverso v. Home Depot U.S.A., Inc.*, No. 07-1324, 2007 U.S. Dist. LEXIS 78364, at *5 (D.N.J. Oct. 23, 2007).  The NJCFA provides in relevant part that:

> [T]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, *in connection with the sale or advertisement of any merchandise or real estate*, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2 (2007) (emphasis added).  The text of the statute thus requires on its face that any alleged violation must arise out of a defendants' sale or advertisement of merchandise or real estate.  The New Jersey Superior Court acknowledged this requirement in *O'Loughlin v. National Community Bank*, 770 A.2d 1185 (N.J. Super. 2001), in which the court dismissed a NJCFA claim, stating:

> The Bank did not sell the condominium units to plaintiffs. . . . Our review of the record fails to reveal any direct or indirect promises made by the Bank that were in any way connected with the sale of the subject condominium units.  Similarly, the record does not reveal . . . any specific conduct in violation of the [NJCFA] on the part of the Bank associated with plaintiffs' individual units, occurring subsequent to the time the Bank obtained title.

*Id*. at 1194.

Similarly, in *Cetel v. Commonwealth Life Ins. Co.*, 460 F.3d 494 (3d Cir. 2006), the Third Circuit dismissed a NJCFA claim in a case involving the sale of life insurance policies.  In that case, plaintiffs claimed that defendants had misrepresented the potential tax benefits of their insurance plans in order to induce plaintiffs to purchase them.  The Third Circuit dismissed the NJCFA claim on the basis of its holding that the plans were complex tax-avoidance schemes sold only to investors, and not the general public.  *Id.* at 514.  Since the plans were not marketed to

the general public, the sale of these plans to investors did not did not "point to the remedial purpose or intent of the CFA, 'namely, to root out consumer fraud.'" *Id.* at 515 (citation omitted).  *See also Del Tufo v. National Republican Senatorial Comm.*, 591 A.2d 1040, 1042 (N.J. Super. Ch. Div. 1991) ("[T]he Court's view is that the reach of the [Consumer Fraud] Act is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services.").

In this case, plaintiffs do not allege (nor can they) that Magellan sold or advertised any merchandise or services of any type to them or the public.  Rather, they allege that Magellan contracted *with Horizon* to provide certain administrative services with respect to Horizon's managed health programs.  *Beye* TAC ¶¶ 13-16; *Foley* SAC ¶ 8-11.  For this reason, plaintiffs' NJCFA claims against Magellan fail.

### 2.    Plaintiffs Do Not Allege Fraud With The Specificity Required By The NJCFA.

The NJCFA claims also should be dismissed because plaintiffs do not allege fraud under the NJCFA with sufficient specificity.  In *Paul Revere Life Insurance Co. v. Fink*, No. 07-1648, 2007 U.S. Dist. LEXIS 84060, at *6 (D.N.J. Nov. 14, 2007), the district court dismissed a NJCFA claim because the plaintiff had not sufficiently plead that the defendant "used an unconscionable practice, deception, or knowing concealment of a material fact in connection with its sale of insurance to [plaintiff]."  The plaintiff's complaint contained only vague allegations that the insurance company misrepresented the nature of its policy at the time of the sale of the policy to the plaintiff.  *Id.*  The district court held that plaintiff's failure to specify the nature of these misrepresentations and the identity of the person making them mandated dismissal under Rule 9(b)'s specificity requirements.  *Id.* at *5-7; *see also Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 510-12 (D.N.J. 1999) (holding that

Rule 9(b) applied in a case in which the plaintiff had alleged "unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation" in violation of the NJCFA and dismissing NJCFA claim because complaint failed to inform defendants of "the substance of these alleged misrepresentations.") (emphasis in original).

Like the complaints in *Fink* and *Naporano*, the *Foley* and *Beye* complaints contain only vague allegations of Magellan's allegedly wrongful conduct.  For example, the *Foley* Second Amended Complaint states that Magellan's conduct "includes unfair and unconsciousable [sic] commercial practices, deception, fraud, misrepresentations and the knowing concealments or omissions of material facts with the intent of others rely [sic] on such concealment."  *Foley* SAC ¶ 42.  Similarly, the *Beye* Third Amended Complaint states that Magellan's conduct includes:

> the use of unfair and unconscionable claims processing tactics and strategies amount[ing] to unconscionable commercial practices, deception, fraud, misrepresentations, false promises, false pretenses, and/or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in violation of the New Jersey Consumer Fraud Act.

*Beye* TAC ¶ 76.

Nowhere in either complaint do the *Foley* or *Beye* plaintiffs identify what misrepresentations Magellan allegedly made, who made them, and how they deceived plaintiffs. If plaintiffs are unable to plead the "date, place, or time" of the fraud, they must use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).  Plaintiffs have not met these requirements, and the NJCFA claims should be dismissed.

H.     *Beye* **Plaintiffs' UTPCPL Claim Should Be Dismissed.**

    1.     **New Jersey Plaintiffs Do Not Have Standing For A UTPCPL Claim.**

The Court should dismiss *Beye* plaintiffs' UTPCPL claim because the statute is a remedy solely for Pennsylvania residents. *See*, *e.g.*, *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Pa. 2006) ("[T]he court agrees with defendants that the UTPCPL provides a remedy only to Pennsylvania residents."). The *Beye* plaintiffs are New Jersey residents and thus do not have standing to assert a UTPCPL claim.

    2.     **Plaintiffs Cannot Bring A UTPCPL Claim In Tandem With A NJCFA Claim Under New Jersey Law.**

The *Beye* plaintiffs may not pursue a UTPCPL claim in tandem with their NJCFA claim, as New Jersey law controls this case. This Court, recognizing that the NJCFA and the UTPCPL conflict, has engaged in a case-by-case choice of law analysis to determine which state's law applies. *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 373 (D.N.J. 2004) (holding that where plaintiffs lived in Pennsylvania, were treated in Pennsylvania, and viewed advertising regarding the prescribed medication in Pennsylvania, and the only New Jersey contact was defendants' principle places of business were in New Jersey, the UTPCPL applied). *Compare Atlass v. Mercedes-Benz USA, LLC*, No. 07-2720 2007 U.S. Dist. LEXIS 72603 (D.N.J. Sept. 25, 2007) (applying the UTPCPL because the injury and the conduct causing the injury occurred in Pennsylvania).

Here, *Beye* plaintiffs are New Jersey residents. *Beye* TAC ¶¶ 8, 10. Their insurance contracts are with Horizon, a New Jersey company. *Id.*, ¶ 12. ███████████████

████████████████████████████████████████████████

████████ Under a choice of law analysis, these significant contacts with New Jersey, combined

with the lack of any contacts with Pennsylvania, bar plaintiffs from combining their UTPCPL

claim with a NJCFA claim.

> **3.**     **The UTPCPL Claim Fails Because There Are No Allegations That Plaintiffs Relied Upon Any Conduct Or Representations Of Magellan.**

Plaintiffs have failed to allege sufficient facts to make out a cause of action under the

UTPCPL.  The Pennsylvania Supreme Court explicitly has held that a plaintiff must allege a loss

suffered "as a result" of defendant's prohibited conduct in order to successfully bring a private

cause of action under the UTPCPL.  *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001).

"The Court has interpreted this language to mean that a plaintiff must establish his specific

reliance on some conduct or representation by the defendant that caused him to incur the loss in

question."  *Sexton v. PNC Bank*, 792 A.2d 602, 607 (Pa. Super. Ct. 2002); *see also Atlass*, 2007

U.S. Dist. LEXIS 72603, at *33 ("To state a claim for relief under the UTPCPL . . . a plaintiff's

complaint must allege that he 'justifiably relied on the defendant's wrongful conduct or

representation' and that he suffered an ascertainable loss as a result of that reliance.") (citation

omitted).  *Cf. Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007) ("[T]he

[Consumer Protection Law's] underlying foundation is fraud prevention . . . [n]othing in the

legislative history . . . suggests that the legislature ever intended statutory language directed

against consumer fraud to do away with the traditional common law elements of reliance and

causation.") (citation omitted).

Here, *Beye* plaintiffs make conclusory allegations that Magellan's conduct includes "the

use of unfair and unconscionable claims processing tactics and strategies amount[ing] to

unconscionable commercial practices, deception, fraud, misrepresentations, false promises, false

pretenses, and/or the knowing concealment, suppression or omission of material facts with the

intent that others rely upon such concealment, suppression or omission" *Beye* TAC ¶ 76, but

34

they do not identify any specific "conduct or representation" by Magellan as the cause of their alleged loss.  Nor do they allege any facts regarding the nature of the claimed deception, or the content of any misrepresentations.  Lacking allegations of such conduct or misrepresentations and reliance, the UTPCPL claim fails.

I.     **The Claims Of The Medical Necessity Plaintiffs Should Be Dismissed.**

Under *Twombly*, the Court is required to determine at the motion to dismiss stage whether plaintiffs' claims are "plausible on [their] face." *Twombly*, 127 S.Ct. at 1974.  Certain plaintiffs (*e.g.*, Byram and Drazin) allege that coverage for treatment of eating disorders was denied based on lack of medical necessity, but these allegations do not state a plausible theory of relief under any of their causes of action, and therefore should be dismissed.

The *Beye* complaint explicitly acknowledges the lawsuit is fundamentally about whether Horizon properly determined that eating disorders are non-biologically based and therefore not subject to the Parity Law.  *Beye* TAC ¶ 1 ("this lawsuit addresses an issue which is common and typical to all eating disorder claimants, whether Horizon and Magellan may deny or reduce coverage for eating disorder treatment under the guise that such disorders are non-BBMI").  *See also id*. (noting that whether the specific treatment for which plaintiffs sought coverage is medically necessary and appropriate is "an issue to be decided outside of this class action").  As a result, whether Horizon and Magellan improperly determined that eating disorders are non-biologically based is an essential element of each of plaintiffs' causes of action against Magellan.  Plaintiffs who were denied coverage solely because of a finding that treatment was not medically necessary cannot plausibly shoe-horn their claims into these causes of action.

For example, whether Magellan violated the Parity Law by reducing or denying coverage for eating disorders as non-biologically based (*Beye* Count IV; *Foley* Count II) has nothing to do with whether Magellan denied coverage to plaintiffs such as Byram and Drazin based on a

finding that treatment was not medically necessary.  Likewise, plaintiffs' NJCFA claims (*Beye* Count V; *Foley* Count IV) and the *Beye* plaintiffs' UTPCPL claim (*Beye* Count VI) are premised on allegations that "plaintiffs' insurance policies provide unlimited annual coverage for BBMI, but only significantly limited coverage for non-BBMI."  *Beye* ¶¶ 74, 81.  Those plaintiffs whose claims were denied coverage for medical necessity, and not because they had exhausted their annual or lifetime benefits based on a determination that their disorder was non-biologically based, could not have been defrauded by the medical necessity denial.

In their tortious interference claims (*Beye* Count IX; *Foley* Count V), plaintiffs claim that under their Horizon insurance contracts, they reasonably expected "that Horizon would *cover treatment for BBMIs such as eating disorders* that were determined to be medically necessary and appropriate in accordance with the terms of their contracts of insurance" (*Beye* TAC ¶ 99; *Foley* SAC ¶ 46) (emphasis added), and that Magellan tortiously interfered with those contracts. In other words, plaintiffs' tortious interference claims are based on the presumption that eating disorders are biologically-based and thus subject to the Parity Law's provisions.  The same is true with respect to plaintiffs' third party beneficiary breach of contract claims (*Beye* Count X; *Foley* Count VI), which succeed or fail on the question of whether Magellan breached the MCS Agreement (and thereby breached its alleged duties to plaintiffs as third-party beneficiaries of the Agreement) by determining that eating disorder claims are not biologically-based.  Plaintiffs' claims for breach of fiduciary duty (*Beye* Count XI; *Foley* Count III) similarly turn on whether Magellan breached its purported fiduciary duty to plaintiffs by "denying eating disorder claims by improperly characterizing them as Non-BBMI."  *Beye* TAC ¶ 112.

The *Beye* and *Foley* causes of actions are grounded in the allegation that Horizon and Magellan improperly denied coverage for eating disorders based on a determination that eating

disorders are not biologically based, and only those plaintiffs who were denied coverage because they exhausted their limited benefits under their Horizon health plans can plausibly state claims against Magellan.  Those plaintiffs whose claims were denied in their entirety based on a medical necessity determination, and not an exhaustion of benefits determination, cannot.

**J.     Magellan's Bankruptcy Discharge Bars Claims For Conduct Before January 2004**

The Court should dismiss claims against Green Spring Health Services, Inc., Magellan Health Services, Inc. and Magellan Behavioral Health, Inc. arising or accruing before January 5, 2004 because they are barred by Magellan's bankruptcy discharge.[13]  While *Beye* plaintiffs acknowledge the bankruptcy bar and initially appear to limit their claims against Magellan to "those which arose or accrued on or after January 5, 2004, [the] date on which Magellan emerged from or confirmed a plan in Chapter 11 proceedings in the U.S. Bankruptcy Court, Southern District of New York (Bankruptcy Petition No. 03-4515-pcb)," *Beye* TAC ¶ 16 n.1, their Prayer for Relief seeks to certify a "Magellan pre Chapter 11 sub-class." *Beye* TAC at 31. *Foley* plaintiffs do not address the effect of Magellan's bankruptcy discharge.

Pursuant to 11 U.S.C. § 1141(d)(1)(A), an order confirming a plan of bankruptcy "discharges the debtor from any debt that arose before the date of such confirmation."  *See also F.C.C. v. NextWave Personal Communications*, 537 U.S. 293, 303 (2003) ("a discharge in bankruptcy discharges the debtor *from all debts that arose before bankruptcy*").  Plaintiffs' claims against the Magellan Defendants constitute debts subject to discharge under the

_____

[13] Magellan-New Jersey is not affected by the bankruptcy discharge because it was not one of the Magellan entities that filed for bankruptcy protection on March 11, 2003.  ███████████████████ ███████████████████████████████████████████████████████████  *See* Section II.A above.

Bankruptcy Code.  *See* 11 U.S.C. § 101(12) (a debt under the bankruptcy code is defined as a

liability on a claim); § 101(5) (a "claim" is broadly defined and includes the "right to payment,

whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . ").  *See also In re

Cambridge Biotech Corp.*, 186 F.3d 1356, 1371 (Fed. Cir. 1999) (tort claims are debts under the

Bankruptcy Code).  Accordingly, any claims against Magellan that arose or accrued prior to

January 5, 2004 should be dismissed.  *See Kresmery v. Service Am. Corp.*, 227 B.R. 10, 14 (D.

Conn. 1998) (dismissing employment discrimination claim as discharged upon confirmation of

the bankruptcy plan); *Krafczek v. Exide Corp.*, No. 00-1965, 2007 WL 1199530, at *1-2 (E.D.

Pa. Apr. 19, 2007) (dismissing claim for decontamination relief against manufacturer as

discharged in bankruptcy proceedings); *MCI WorldCom Network Servs., Inc.*, 2005 US Dist.

LEXIS 40835, at *37 (D.N.J. May 11, 2005) (on motion to dismiss, dismissing claims that arose

prior to date of bankruptcy confirmation plan).

## CONCLUSION

For the reasons set forth above, Magellan respectfully requests that pursuant to Rule

12(b)(1), the Court dismiss with prejudice the claims of plaintiffs Beye and Sedlak for lack of

subject matter jurisdiction.  Further, Magellan respectfully requests that pursuant to Rule

12(b)(6), the Court dismiss with prejudice the following claims in the *Beye* Third Amended

Complaint:  Count IV (Violation of the New Jersey Parity Law); Count V (Violation of New

Jersey Consumer Fraud Act); Count VI (Violation of the Pennsylvania Consumer Fraud Act);

Count IX (Tortious Interference with Contract Rights); Count X (Third Party Beneficiary Breach

of Contract); and Count XI (Breach of Fiduciary Duty).  In addition, pursuant to Rule 12(b)(6),

Magellan respectfully requests that the Court dismiss with prejudice the following claims in the

*Foley* Second Amended Complaint:  Count II (Violation of the New Jersey Parity Law); Count

III (Breach of Fiduciary Duty), Count IV (Violation of the New Jersey Consumer Fraud Act);

Count V (Tortious Interference with Contract Rights); and Count VI (Third Party Beneficiary

Breach of Contract).  Because none of the claims pled against Magellan are viable as a matter of

law, Magellan respectfully respects that the Court dismiss Magellan from this action with

prejudice.

Dated:  January 29, 2008                   By:  _____/s/ Thomas F. Quinn_____
                                                Thomas F. Quinn, Esq.
                                                Robert P. Lesko, Esq.
                                                Joseph P. Rindone, Esq.
                                                WILSON ESLER MOSKOWITZ
                                                EDELMAN & DICKER LLP
                                                33 Washington Street
                                                Newark, NJ  07102
                                                Tel:  (973) 624-0800
                                                Fax:  (973) 624-0808

                                                Kathleen Taylor Sooy
                                                Christopher Flynn
                                                Tracy A. Roman
                                                CROWELL & MORING LLP
                                                1001 Pennsylvania Avenue, NW
                                                Washington, DC  20004
                                                Tel:  (202) 624-2500
                                                Fax:  (202) 628-5116

                                                *Attorneys for Defendants Magellan Health
                                                Services, Inc., Green Spring Health
                                                Services, Inc., Magellan Behavioral Health,
                                                Inc., and Magellan Behavioral Health of
                                                New Jersey LLC*

#4859877